IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, </br></br> Plaintiff, </br></br> v. </br></br> DIALAMERICA MARKETING, INC., </br></br> Defendant. | CIVIL ACTION NO. </br></br> **COMPLAINT** </br></br> **JURY TRIAL DEMANDED** |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, brought by the United States Equal Employment Opportunity Commission to correct unlawful employment practices on the basis of race and sex and to provide appropriate relief to Charging Party Donisha Williams. Defendant DialAmerica Marketing, Inc. violated Title VII when it discriminated against Charging Party because of race and/or sex and when it unlawfully retaliated against her.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) (Title VII) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Ohio.

1

## PARTIES

2. Plaintiff, the United States Equal Employment Opportunity Commission (the Commission or the EEOC), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

3. Defendant DialAmerica Marketing, Inc. (DialAmerica or Defendant) is a New Jersey corporation that is also known by the fictitious name, "Aucera," pursuant to its corporate rebrand efforts.

4. At all relevant times, Defendant has continuously been doing business in Middleburg Heights, which is a suburb of Cleveland, Ohio that is located in Cuyahoga County, and Defendant has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce as defined by Title VII.

6. At all relevant times, Defendant has been a covered entity as defined by Title VII.

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge with the United States Equal Employment Opportunity Commission alleging violations of Title VII by Defendant.

8. On June 14, 2024, the Commission issued to Defendant a Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On August 8, 2024, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11. DialAmerica is a national telephone marketing service company that operates call centers located throughout the United States and employs more than 2,000 employees nationwide.

12. Charging Party is a Black woman.

13. Charging Party submitted application materials seeking employment opportunities with DialAmerica.

14. DialAmerica records include notes or entries made regarding Charging Party's interview, job offer, and status. Those records including notes or entries stating that Charging Party had previous call center experience and had "a great job preview." Those records also describe Charging Party "easy to listen to," "nice," and "very cheery."

15. DialAmerica records show that DialAmerica concluded Charging Party was qualified for the position for which she was hired.

16. DialAmerica hired Charging Party to work as a Call Center Agent.

17. On November 7, 2022, Charging Party began working for DialAmerica at its call center located in Middleburg Heights, which is a suburb of Cleveland that is located in Cuyahoga County, Ohio.

18. DialAmerica policy states that the company listens to or reviews, on a daily and weekly basis, calls that are handled by its Call Center Agents. The policy also refers to

documented reviews, also called call monitor reports, that are issued to Call Center Agents regarding such calls.

19. On November 11, 2022, DialAmerica issued to Charging Party a call monitor report in which she received the highest ratings attainable (5 points attained out of 5 points possible) in multiple categories including, but not limited to, always being focused and prepared; enthusiastically greeting and thanking the customer; being conversational, enthusiastic, and willing to help; listening and addressing the caller appropriately; relating and responding appropriately; being polite and professional; using good exit call judgment; and thanking the caller and using courtesy.

20. On November 18, 2022, DialAmerica issued to Charging Party a call monitor report in which she received the highest ratings attainable in multiple categories including, but not limited to, highlighting actions that can be taken for the caller; asking appropriate questions and following protocols; properly addressing questions; listening and addressing the caller appropriately; relating and responding appropriately; being polite and professional; and thanking the caller and using courtesy.

21. In the November 18, 2022 call monitor report described above, DialAmerica issued to Charging Party the highest ratings attainable in every category in which her performance was assessed.

22. On November 22, 2022, DialAmerica issued to Charging Party a Progress Review.

23. The Progress Review described above included the following statement from DialAmerica management: "I value you because you are learning this program fast and asking all the right questions."

24. The Progress Review described above included a section for DialAmerica to enter any "comments" regarding Charging Party's performance, during each of four workweeks listed, and to describe any "coaching" that had been provided during each week. DialAmerica did not enter any "comments" concerning Charging Party's performance in those sections nor did the company state that any "coaching" had occurred. The Progress Review does not state or allege that Charging Party had violated any company policy or that any progressive or other disciplinary action had been taken against her or was warranted. In the section provided for the company to describe or propose any Employee Development Plan, DialAmerica proposed none.

25. On November 22, 2022, DialAmerica issued to Charging Party a call monitor report in which she received the highest ratings attainable in several categories including, but not limited to, categories listed above in Paragraphs 19 and 20.

26. In the November 22, 2022 call monitor report described above, DialAmerica issued to Charging Party the highest ratings attainable in every category in which her performance was assessed.

27. On Friday, December 2, 2022, DialAmerica issued to Charging Party a call monitor report. In that report, DialAmerica marked 18 out of 27 assessment categories "N/A" (not applicable).

28. If an assessment category in a DialAmerica call monitor report is marked "N/A" then the Call Center Agent cannot be awarded points in that category even if they have demonstrated good job performance in that category.

29. The December 2 call monitor report described above includes a section entitled "Recommendations," but DialAmerica entered no text in that section.

30. The December 2 call monitor report described above includes a section entitled "Actions Taken," but DialAmerica entered no text in that section.

31. The December 2 call monitor report described above does not state or allege that Charging Party had violated any company policy or that any progressive or other disciplinary action had been taken against her or was warranted.

32. DialAmerica manager Joy Prince met with Charging Party on December 2, 2022, to discuss the December 2 call monitor report described above. During that meeting Prince told Charging Party that she has been doing great on the calls and that they needed to get back to following the script. Prince did not tell Charging Party that she had violated any company policy or that any progressive or other disciplinary action had been taken against her or was warranted.

33. Approximately three hours after DialAmerica issued the December 2 call monitor report and Joy Prince met with Charging Party about it, as described above, DialAmerica manager Juliet Nickels met with Charging Party. DialAmerica records of the meeting describe it as part of the company's "Monitor" and "Compliance" program.

34. In DialAmerica records describing Charging Party's meeting with Nickels, management described Charging Party as "a very out-going person who presents as professional." The meeting records contain no reference, whatsoever, to areas where management believed Charging Party could improve, including any calls that had been assessed or call monitor reports, nor do they mention any purported concern about any aspect of her job performance.

35. Juliet Nickels later wrote an email that described the meeting that she conducted with Charging Party on December 2, 2022. In that email, Nickels wrote that Charging Party presented as an out-going agent who appeared to be happy with her job. The email from Nickels does not state or allege that Charging Party's job performance was deficient in any way, nor does

it say that Charging Party was notified during their meeting, or at any other time, that her performance was deficient.

36. Approximately two hours after Charging Party's meeting with Nickels concluded, DialAmerica manager Sylvia Freeman called Charging Party to her office and told her that she was being fired. Freeman described a call that allegedly occurred on December 1, 2022, and falsely accused Charging Party of using profanity towards the caller during that call. Freeman also made other incorrect claims and accusations during the meeting.

37. Charging Party opposed the false accusations, the incorrect claims, and the action taken against her.

38. According to DialAmerica, the call during which Freeman falsely accused Charging Party of using profanity towards the caller was recorded. DialAmerica produced to the Commission an alleged recording that the company claims reflects what was said during the call; that alleged recording of the call lasts for less than 30 seconds. Charging Party did not use profanity towards the caller during that call, as alleged.

39. At the end of her meeting with Charging Party on December 2, 2022, Freeman told Charging Party that she was fired.

40. DialAmerica records show that a "Final Warning" was issued for Charging Party in the company's system on December 2, 2022.

41. DialAmerica records show that the "Final Warning" was issued on December 2, 2022, because Charging Party allegedly used profanity towards a caller during a call on December 1, 2022.

42. According to DialAmerica records the "Final Warning" issued on December 2, 2022, states: "This serves as a final warning for Professionalism/Compliance and Polite/Professional. Any further infractions will lead to termination of employment."

43. According to DialAmerica records the "Final Warning" issued on December 2, 2022, lists action that had been taken regarding the subject matter of the warning. The action taken, according to the "Final Warning," was to listen to the call, speak to the employee, and engage in "re-education." DialAmerica did not engage in "re-education" with Charging Party, as alleged.

44. Persons identified by DialAmerica as outside of the protected classes to which Charging Party belongs have been treated more favorably by DialAmerica including, but not limited to, persons identified by DialAmerica as men and/or identified as white or a race other than Black/African American. Such favorable treatment includes, but is not limited to, permitting persons who engage in policy violations, exhibit poor performance, or have been counseled/need improvement to remain employed by DialAmerica or obtain or remain eligible for employment for DialAmerica.

45. DialAmerica did not comply with its internal policies including, but not limited to, the DialAmerica "Just Sounds Better" policy which DialAmerica purportedly relied on to support the action taken against Charging Party.

46. Charging Party was not terminated from her employment with DialAmerica or removed from her position on December 2, 2022.

47. In the morning on Monday, December 5, 2022, Charging Party contacted DialAmerica and said that she believed she was wrongfully terminated and that she was discriminated and retaliated against.

48. On December 5, 2022, DialAmerica advised Raquel Kissel to investigate the information, report, or complaint that Charging Party had communicated to DialAmerica that morning.

49. As of December 5, 2022, Raquel Kissel held a human resource and/or employee relations position at DialAmerica.

50. On December 5, 2022, Raquel Kissel listened to the call during which Charging Party allegedly used profanity towards the caller. After listening to that call Kissel concluded that it seemed like the caller was the person who used profanity during the call, not Charging Party.

51. On December 5, 2022, Kissel wrote an email to management at the Middleburg Heights facility stating that she had listened to the call and "it seems like the caller said, 'I am going to fuck you up,' while Donisha was speaking asking for a call back number. The caller disconnected after that comment."

52. In the same email described above dated December 5, 2022, Raquel Kissel advised management at the Middleburg Heights facility that Charging Party said she was discriminated and retaliated against, and Kissel asked for insight from management about Charging Party.

53. On December 5, 2022, Sylvia Freeman responded in writing to the email that Kissel sent to her that day, as described above. In that response, Freeman claimed that Charging Party had not been performing her job satisfactorily and added that Charging Party "did advise that she does have 4 kids…."

54. DialAmerica terminated Charging Party on December 12, 2022.

55. According to DialAmerica electronic records, Charging Party was removed from her position on December 12, 2022.

56. According to DialAmerica electronic records, Charging Party's employee tenure with DialAmerica ended on December 12, 2022.

57. According to DialAmerica electronic records, a Removal Record was created concerning Charging Party on December 12, 2022.

58. The Removal Record described above bears a "Created Date" of December 12, 2022, a "Submitted Date" of December 12, 2022, and a "Change Completion Date" of December 13, 2022.

59. DialAmerica Status Change electronic records show that Charging Party was removed from her position on December 12, 2022, and that her removal had a "finalApprovalDate" of 12/12/22 at 13:16 hours and a "dateToSS" of 12/13/22 at 1:00 hours.

60. DialAmerica identified Charging Party as ineligible for rehire by entering her rehire status as "N" in the DialAmerica electronic system on December 12, 2022.

## TITLE VII VIOLATIONS

61. The EEOC reasserts the allegations above, as if fully set forth herein.

62. Charging Party is a person protected by Title VII because she is a woman and because she is Black/African American.

63. Charging Party was qualified for the position for which Defendant hired her, as set forth above.

64. Defendant discriminated against Charging Party on the basis of race and/or sex when it subjected her to disparate treatment, disparate terms and conditions of employment, discharge, and other deprivation of employment opportunities.

65. Charging Party engaged in protected activity, as set forth above.

66. Defendant retaliated against Charging Party because she engaged in protected activity when it subjected her to materially adverse action including, but not limited to, disparate treatment, disparate terms and conditions of employment, discharge, other deprivation of employment opportunities.

67. The reasons Defendant asserted for its acts and omissions are pretextual.

68. Charging Party did not engage in the alleged misconduct, as stated above, and the reasons asserted for her discharge and the other action taken against her are pretextual.

69. The effect of the practices complained of above has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect her status as an employee on the basis of race and/or sex.

70. The effect of the practices complained of above has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect her status as an employee because she engaged in protected activity.

71. As a result of the violations described above, Charging Party was deprived of wages and employment benefits and suffered other harm that is compensable under Title VII.

72. The unlawful employment practices complained of above were intentional.

73. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Charging Party.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from discriminating against persons because of race and/or sex and from engaging in unlawful retaliation.

      B.      Prohibit Defendant from engaging in practices that discriminate because of race and/or sex and that infringe on rights secured by Title VII.

      C.      Prohibit Defendant from engaging in practices that constitute unlawful retaliation.

      D.      Order Defendant to promulgate and carry out policies, practices, and programs which provide equal employment opportunities to persons protected by the Title VII and that eradicate the effects of its past and present unlawful employment practices, including discrimination and retaliation.

      E.      Order Defendant to make whole Charging Party by providing to her appropriate backpay with prejudgment interest, and other employment benefits, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to front pay.

      F.      Order Defendant to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above in amounts to be determined at trial.

      G.      Order Defendant to make whole Charging Party by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

      H.      Order Defendant to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

      I.      Grant such further relief as the court deems necessary and proper in the public interest.

      J.      Award the Commission its costs of this action.

JURY TRIAL DEMAND

The United States Equal Employment Opportunity Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN Y. REAMS
Associate General Counsel

s/Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney
United States Equal Employment
Opportunity Commission
Philadelphia District Office

s/Kate Northrup
KATE NORTHRUP
Assistant Regional Attorney
United States Equal Employment
Opportunity Commission
Philadelphia District Office

s/Taylor Hilton
TAYLOR HILTON
Trial Attorney
United States Equal Employment
Opportunity Commission
Cleveland Field Office
1240 East 9th Street, Suite 3001
Cleveland, OH 44199
Taylor.Hilton@eeoc.gov
216-334-6424

13